IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

THOMAS KELLY BALLARD, III,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 1:22-cv-01226-STA-jay

---

**ORDER DENYING RELIEF UNDER 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

---

Thomas Kelly Ballard filed a pro se 28 U.S.C. § 2255 Motion on October 17, 2022. (ECF No. 1.) The Government was directed to respond on October 31, 2022. (ECF No. 4.) Ballard filed a memorandum of law in support of his § 2255 Motion on November 7, 2022. (ECF No. 5.) On January 23, 2023, the Court granted the Government's motion for extension of time to file its response. (ECF No. 11.) The Court extended the Government's response time again on February 21, 2023, and required the Government to file its response by March 7, 2023. (ECF No. 14.)

On February 24, 2023, the Court granted the Government's Motion for an Order Compelling an Affidavit and Production of Case File Materials from Counsel. (ECF No. 16.) The Court ordered David Camp, an attorney who communicated with Ballard in reference to a motion to set aside his guilty plea, to provide an affidavit discussing in appropriate detail all communications, notes, or documents — whether written or oral — relevant to his consultation with Ballard about the guilty plea and any related allegations of ineffective assistance of counsel

in *United States v. Ballard*, No. 1:19-cr-10042-STA. Attorney Camp submitted his affidavit on March 3, 2023. (ECF 17.)

Thereafter, the Government filed its answer in opposition to the motion (ECF No. 18) and also filed the affidavit and supplemental affidavit of Leslie Ballin, Ballard's attorney during the criminal proceedings. (ECF Nos. 18-2, 18-3.) Additionally, the Government filed a proposed exhibit list that would have been used at trial (ECF No. 18-1), an unsigned plea agreement (ECF No. 18-4), the affidavit of Andrew Pennebaker, trial attorney in the fraud section of the criminal division of the United States Department of Justice who was assigned to the prosecution of Ballard (ECF No. 18-5), and a transcript of Ballard's October 19, 2021 sentencing. (ECF No. 18-6.)

Ballard requested additional time to reply to the Government's answer (ECF No. 19), and he also filed a motion to compel production of likely privileged information concerning Attorney Ballin's communications with the Tennessee Board of Professional Responsibility and to obtain a copy of Attorney Camp's sealed affidavit. (ECF No. 20.) The Court granted the portion of the motion seeking a copy of Attorney Camp's affidavit but denied the remaining portion because Ballard acknowledged that Attorney Ballin was attempting to provide him with his case file which included an email wherein Attorney Ballin conveyed the substance of his communication with the Board. (ECF No. 26.)

After Ballard obtained counsel for this proceeding, the Court granted his motion to amend his original 28 U.S.C. § 2255. (ECF No. 34.) The amended motion was filed on October 31, 2024. (ECF No. 35.) The Government filed its amended answer on December 9, 2024 (ECF No. 39), and Ballard filed a reply on January 13, 2025. (ECF No. 42.) The matter has now been fully briefed, and the Court finds that the motion should be **DENIED**.

2

## Background

On April 15, 2019, a grand jury in the Western District of Tennessee issued an indictment charging Ballard with one count of maintaining drug-involved premises in violation of 21 U.S.C. § 856, sixteen counts of unlawfully distributing a Schedule II controlled substance in violation of 21 U.S.C. § 841, and one count of unlawfully distributing a Schedule II controlled substance resulting in serious bodily injury or death in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Ballard was initially represented by attorney Stephen Elliott; he retained attorney Leslie Ballin as lead counsel soon thereafter.[1] (ECF No. 31.)

The Government made Ballard a written plea offer on July 6, 2020. That offer was not accepted. After granting two requests by Ballard to continue the trial, the Court set trial for June 28, 2021, with a final pretrial conference on May 28, 2021, and a change-of-plea deadline of June 14, 2021.

On June 8, 2021, Attorney Ballin asked the Government if it would revive the plea offer from July 2020. The terms of that plea offer and agreement included the following appellate waiver:

> If [Defendant] had proceeded to trial and had been convicted, he would have had the right to appeal the conviction. He understands that by pleading guilty, he gives up the right to appeal the conviction. Based on concessions made in this plea agreement by the United States, he also hereby waives his rights to appeal his sentence, unless the sentence exceeds the maximum permitted by statute.
>
> Except with respect to claims of ineffective assistance of counsel or prosecutorial misconduct, Defendant waives his right to challenge the sufficiency or the voluntariness of his guilty plea on direct appeal or in any collateral attack….

(July 2020 Draft Plea Ag., ¶¶ 2(b)-(c), ECF No. 18-4.)

---

[1] Attorney Ballin represented Ballard beginning in May 2019 through the remainder of his criminal case. This included his guilty plea and sentencing.

The Government's July 2020 plea offer also included the following Rule 410 waiver:

Defendant further expressly waives his rights pursuant to Rule 410(a) of the Federal Rules of Evidence upon affixing his signature to this plea agreement. Defendant understands and agrees that in the event Defendant violates the plea agreement, Defendant does not enter his plea of guilty, or his guilty plea is for any reason withdrawn, the following shall be admissible for all purposes against Defendant in any and all criminal matters:

i. any statements made by Defendant to law enforcement agents or an attorney for the prosecuting authority during plea discussions;
ii. any statements made by Defendant during any court proceeding involving Defendant's plea of guilty, including the "agreed facts" set forth herein;
iii. any other factual bases or summaries signed by Defendant; and
iv. any leads from such statements, factual bases, or summaries….

(*Id.* at ¶ 4(c).)[2]

On June 10, 2021, the Government responded that it could not revive the original plea offer but would consider making a modified offer involving a Rule 11(c)(1)(C)[3] plea to a 20-year sentence, the mandatory minimum if Ballard pled to Count 18 in the indictment.

On June 17, 2021, the Court ruled in the Government's favor on a motion to exclude a portion of the anticipated testimony of Ballard's expert.

On June 21, 2021, counsel for the Government received a call from Attorney Ballin inquiring about a potential resolution to the case. Initially, he again asked for a revival of the July 2020 offer but later indicated that Ballard would also consider the Rule 11(c)(1)(C) offer. After conferring with his client, Attorney Ballin explained that Ballard was willing to go forward on the

---

[2]  The parties dispute whether the appeal waiver language accepted by Ballard applied only to sentencing issues. The Court has assumed without deciding that nothing contained in the signed plea agreement prevented Ballard from appealing the guilty plea or conviction itself.
[3] Rule 11(c)(1)(C) allows the United States "to agree that a specific sentence or sentencing range is the appropriate disposition of the case." Such a plea agreement requires the Court's approval pursuant to Fed. R. Crim. P. 11(c)(3)(A). *See Hitchcock v. United States*, 2025 WL 3231620, at *1 (E.D. Tenn. Nov. 19, 2025).

20-year plea on two conditions: Ballard's fine and forfeiture must be limited, and Ballard wanted

to remain out of custody pending sentencing. Ultimately, the parties arrived at specific provisions

of the new agreement: (1) the count of conviction and accompanying 20-year sentence, with a

corresponding factual basis; (2) the amounts of the forfeiture and fine; and (3) Ballard's remaining

on bond after entering his plea.

Counsel for the Government then located a plea agreement under Rule 11(c)(1)(C) that had

been used in the Western District of Tennessee and modified only the portions of the agreement

relating to the forfeiture amount, the factual basis, and maintaining Ballard's bond conditions

pending sentencing. The Government did not seek or receive approval to modify its July 2020

offer as it pertained to the appellate waiver or the Rule 410 waiver.[4] (Pennebaker Aff., ECF No.

18-5.)

The signed plea agreement contained the following language:

13. The Defendant is aware that 18 U.S.C. Section 3742 affords him the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the Defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal any sentence imposed or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. Section 3742(b). However, if the United States appeals the Defendant's sentence pursuant to 18 U.S.C. Section 3742(b), the Defendant shall be released from the above waiver of appellate rights. By signing this agreement, the Defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The Defendant further agrees, together with the United States, to request that the district court enter a specific finding that the Defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

14. The Defendant understands that Title 28, United States Code, Section 2255 provides an additional method by which to challenge the sentence imposed by the

---

[4]  *See supra* note 2.

Court. Acknowledging this, the Defendant knowingly and voluntarily waives his right. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

(Plea Agr., ECF No. 101, 1:19-cr-10042-STA.)

Ballard signed the plea agreement on June 21, 2021, and entered a plea of guilty to Count 18 of the indictment on June 23, 2021, acknowledging that he unlawfully distributed a Schedule II controlled substance (hydrocodone) resulting in the death of a patient (referred to in the indictment as "A.L."). In exchange for Ballard's guilty plea, the Government agreed to dismiss the remaining seventeen counts of the Indictment. Pursuant to Rule 11(c)(1)(C), the plea agreement recommended a sentence of 240 months imprisonment, which is the mandatory minimum sentence for the subject offense. Ballard was allowed to remain out on bond as agreed to.

At the change of plea hearing, Ballard was placed under oath and cautioned that he could be prosecuted for perjury or for giving a false statement under oath if he was not "honest and truthful." (Tr. p. 7, ECF No. 108, 1:19-cr-10042-STA.)  Ballard replied that he understood. (*Id.*) He described his education as "High school, college, medical school, three years residency after medical school." (*Id.* at p. 8.) In response to the question by the Court, "Are you satisfied, and do you believe that you do fully understand everything that you're doing here today?" Ballard answered, "Yes, sir."  (*Id.* at pp. 10-11.) The Court followed up by asking:

> Is there anything else, Dr. Ballard, going on in your life, than obviously what we're dealing with here today, that you think would prevent you, or have any impact on your ability to understand what you're doing in court today and the consequences of what you're doing in court today?

(*Id.* at p. 11.)  Ballard responded, "No, sir." (*Id.*)

Next, Ballard was asked about his assessment of Attorney Ballin's representation:

> THE COURT: Have you had an opportunity to discuss your case fully and completely with your attorney, Mr. Ballin?

6

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Ballin been able to explain to your satisfaction what the facts of the case are, what the law would be that applies to your case, and what your options are about whether to proceed to trial or enter a guilty plea?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with Mr. Ballin's representation of you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you think he's done a good job?

THE DEFENDANT: Yes, sir.

(*Id.* at p. 12.) After advising Ballard of his rights if he went to trial and the sentencing procedure

and process, the Court engaged in the following colloquy with Ballard.

THE COURT: Did you have an opportunity to review the contents of the plea agreement with Mr. Ballin fully and completely before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied that you understood everything that's in the plea agreement, and that you did so before you signed it?

THE DEFENDANT: Yes, sir.

(*Id.* at pp. 20-21.)

Ballard acknowledged that, during the change of plea colloquy, the Government accurately

detailed the appeal and collateral attack waiver as contained in the plea agreement. (*Id.* at pp.

27–28). The Government explained:

The defendant is aware that 18, U.S.C., Section 3742, affords him the right to appeal the sentence imposed in this case.

Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18,

7

> U.S.C., Section 3742 to appeal any sentence imposed, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute, or is the result of an upward departure from the guideline range that the Court establishes at sentencing.
> …
> By signing this agreement the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney.
>
> The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.
>
> The defendant understands that Title 28, United States Code, Section 2255, provides an additional method by which to challenge the sentence imposed by the Court.
>
> Acknowledging this, the defendant knowingly and voluntarily waives his right. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

(*Id.*) The Government also specified that:

> By signing this agreement, the defendant affirms that he is satisfied with his lawyer's counsel and representation, and hereby freely and voluntarily enters into this plea agreement.

(*Id.* at pp. 28-29.) After the Government's recitation of the provisions of the plea agreement and before affirming that the recitation was the same as his understanding of that agreement, Ballard was granted permission to confer with his attorney. (*Id.* at p 29.) Ballard then affirmed that the "terms and conditions" of the plea agreement just reviewed by the Government were those he understood to be in the agreement before he signed it. (*Id.* at p 30.)

Thereupon, the Court also reviewed the "terms and conditions" of the plea agreement with Ballard. Ballard further indicated that he agreed that the factual basis was accurate and that his plea was knowing and voluntary.

> THE COURT: So you understand that you're admitting under oath that you committed the offense that's set forth in paragraph four of the plea agreement. Is that correct?

8

THE DEFENDANT: Yes, sir.

THE COURT: And are you doing that freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone pressured you in any way, promised you anything, or done anything at all to try to get you to admit to the facts against your will?

THE DEFENDANT: No, sir.

(*Id.* at p. 32.)

The Court then discussed Ballard's appeal waiver with him.

Paragraph 13 states that you are voluntarily waiving or giving up your right to file both a direct appeal and a collateral attack.

Normally when someone is sentenced in Federal court, if they're unhappy with the sentence they receive, then they have the right to appeal to a higher Court and ask that higher Court to review what's happened here. In paragraph 13 you are what we call waiving or giving up that right.

Basically in your case what that's going to mean is if I accept the plea agreement, you're going to know that the period of incarceration will be 240 months. You're going to know that if a fine is imposed it would not exceed $10,500. And you're going to know that there will be a period of what's called supervised release, which you would serve after you serve any period of incarceration. I can't tell you exactly what period that would be and what conditions would be imposed.

But bottom line, you're giving up or waiving your right to file any type of appeal, except under the very limited circumstances that are set forth in paragraph 13 of the plea agreement.

Is that the way you understood it?

THE DEFENDANT: Yes, sir.

THE COURT: And did you intend to give up and waive your right to file a direct appeal?

THE DEFENDANT: Yes, sir.

9

THE COURT: Paragraph 14 is somewhat similar. It's what we call a collateral attack under Section 2255.

Under that section a person who is incarcerated can ask the Court, they can file what's called a petition under Section 2255, basically stating I'm being held against my will or that I should not be incarcerated, or the sentence that is imposed is incorrect for some reason.

But again, you're waiving that right. You're waiving and giving up your right to file a collateral attack under Section 2255.

Is that what you intended to do?

THE DEFENDANT: Yes, sir.

(*Id.* at pp. 36-38.)

The Court then stated:

The Court further finds that Dr. Ballard is represented by competent counsel in Mr. Ballin. And that Dr. Ballard has told the Court that he is, in fact, satisfied with Mr. Ballin's representation.

The Court further finds that Dr. Ballard has knowingly, intentionally and voluntarily waived his right to file a direct appeal, as set forth in paragraph 13 of the plea agreement, as well as his right to file a collateral attack under Section 2255, as set forth in paragraph 14 of the plea agreement.

(*Id.* at p. 41.)

The Government does not dispute that, before he was set to be sentenced, Ballard informed Attorney Ballin that he wanted to move to withdraw his guilty plea. After conferring with the Tennessee Board of Professional Responsibility, Attorney Ballin believed that he could not ethically file such a motion and encouraged Ballard to seek the advice of separate counsel. (Ballin Aff. ¶ 5, ECF No. 18-3.) Ballard consulted with Attorney David Camp who advised Ballard not to move to withdraw his plea. (Mot., p. 38, ECF No. 1.) This led Ballard to the decision that he "had no choice but to proceed with sentencing." (*Id.*)

10

On October 18, 2021, the day before he was set to be sentenced, Ballard emailed Attorney Ballin a proposed "sentencing hearing statement," asking the Court to allow him to withdraw from the plea agreement without penalty and go to trial. (*Id*. at p. 52; October 18, 2021 email from Ballard to Ballin, ECF No. 1-1.) However, at the sentencing hearing on October 19, 2021, the Court asked Ballard if he wished to make any statement, and Ballard declined ("No, sir, I don't want to make any statements.") (Sent. TR., pp. 11-12, ECF No. 18-6.) The Court then accepted the recommendation of the parties and sentenced Ballard to 240 months imprisonment, followed by three years supervised release. The Court also imposed a $10,000 fine and ordered forfeiture in the amount of $10,500, consistent with the agreed forfeiture provision of the plea agreement. In consideration of Ballard's plea, the Government moved to dismiss the remaining counts in the indictment. Ballard was allowed to self-report to his designated place of incarceration as agreed by the parties.

On October 17, 2022, Ballard filed his pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and then later was allowed to file an amended motion. Ballard raises three grounds for § 2255 relief: (1) Counsel was ineffective for failing to meaningfully consult with Ballard regarding an appeal; (2) Counsel was ineffective for failing to move to withdraw Ballard's guilty plea; (3) following the Supreme Court's decision in *Ruan v. United States*, there is an insufficient factual basis for Ballard's guilty plea. Ballard asks the Court to vacate the sentence imposed and resentence him in "in order to start the time for appeal running again." *Rosinski v. United States*, 459 F.2d 59 (6th Cir. 1972).

11

**Analysis**

Ballard asks the Court to schedule this matter for an evidentiary hearing on his claims of ineffective assistance of counsel pursuant to 28 U.S.C. § 2255(b). The Government contends that Ballard's motion can be decided on the undisputed facts in the record.

A Court should hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). That is, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citations omitted)). A Court reviewing a § 2255 motion is not required to conduct an evidentiary hearing when a movant's "self-serving statements in an affidavit [] are contradicted by a credible version of events in an affidavit from his trial counsel." *United States v. Walls*, 2008 WL 927926, at *12 (E.D. Ky. Apr. 4, 2008); *see also Cummings v. United States*, 84 F. App'x 603, 2003 WL 23140049 (6th Cir. 2003) (affirming denial of § 2255 motion when district court credited trial counsel's affidavit stating that defendant had not asked him to file appeal); *Garner v. United States*, 2006 WL 2585066 (E.D. Tenn. 2006) (affirming denial of § 2255 motion, crediting counsel's affidavit that defendant did not request appeal over contrary statement of defendant that he requested appeal). The Court finds that an evidentiary hearing is not warranted in the present case because the undisputed facts in the record show conclusively that Ballard's claims are without merit.

12

**Legal Standard**

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In his motion, Ballard claims that Attorney Ballin provided ineffective assistance of counsel. A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a movant must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a movant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A Court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

13

In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is required:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (citations omitted).

To demonstrate prejudice, a movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

There is a "strong presumption that defense counsel's decisions are guided by sound trial strategy," but "[t]he trial strategy itself must be objectively reasonable." *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* at 615-16. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

**Claims**

Ballard's first two claims are (1) Counsel (Attorney Ballin) was ineffective for failing to meaningfully consult with him regarding an appeal and (2) Counsel (Attorney Ballin) was ineffective for failing to move to withdraw his guilty plea. The only ground for an appeal that Ballard posits is the validity of his guilty plea. Because these two claims are inextricably intertwined, the Court will consider them together – looking first at the events surrounding Ballard's guilty plea and his indication to Attorney Ballin that he wanted to withdraw his plea.

The parties agree that, prior to sentencing, Ballard requested that Attorney Ballin file a motion to withdraw his guilty plea and 11(c)(1)(C) plea agreement under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure.  According to Ballard, he wanted to withdraw his guilty plea because he was innocent and was "reluctan[t] to persist in a guilty plea that was based on untruths." Attorney Ballin told Ballard that he would consult with an ethics official and sought a continuance of the sentencing hearing so that he would have time to do so. Ultimately, Attorney Ballin told Ballard that, if he chose to pursue the motion to withdraw his guilty plea, he would withdraw his representation. Attorney Ballin advised Ballard to consult another attorney. Ballard did so and was advised by the second attorney, David Camp, that he should not attempt to withdraw his guilty plea.  Although the day before sentencing, Ballard emailed Attorney Ballin a "sentencing" statement asking the Court not to accept the plea agreement so that he could withdraw from the agreement without penalty and go to trial, Ballard declined to make a statement at the sentencing hearing.

In his motion, Ballard correctly notes that an attorney's failure to file a notice of appeal at the defendant's request is per se ineffective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In cases in which the defendant neither asks for an appeal nor instructs an appeal

15

not be taken, counsel has a constitutional obligation to consult with his client "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481. The *Flores-Ortega* Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Id.* at 471.

Ballard argues that the following facts show that Attorney Ballin had a duty to consult with him regarding a direct appeal: (1) although his plea agreement contained a waiver of appeal under 18 U.S.C. § 3742 which precluded an appeal from the sentence imposed, nothing in the plea agreement precluded an appeal from the underlying conviction or guilty plea itself; (2) Ballard requested counsel to file a motion to withdraw his guilty plea prior to sentencing; and (3) Attorney Ballin did not consult with Ballard regarding an appeal at any time after sentencing. According to Ballard, these undisputed facts show that he demonstrated an interest in appealing his conviction, thus triggering counsel's constitutional obligation to consult with him and "mak[e] a reasonable effort to discover [Ballard's] wishes." *Id.* at 471. He reasons that the failure to have any meaningful consultation with him post-plea and sentencing constitutes deficient performance under *Strickland*.

Ballard acknowledges that, when a defendant enters into an 11(c)(1)(C) plea that stipulates a specific sentence, it is unlikely to be found that a rational defendant would want to appeal when he received the bargained-for sentence as in this case. However, he claims that he "reasonably

16

demonstrated" his dissatisfaction with the 240-month sentence by requesting that Attorney Ballin file a motion to withdraw his guilty plea and plea agreement.

The fallacy with Ballard's argument is that, although he did discuss withdrawing his guilty plea with Attorney Ballin, he did not pursue that avenue after being advised by Attorney Ballin that he would have an ethical obligation to withdraw as counsel of record if Ballard insisted on doing on. Ballard was also advised by an outside attorney, David Camp, that he should not pursue filing a motion to withdraw his plea. Even though Ballard contemplated submitting a statement to the Court at sentencing stating that he wanted to withdraw his plea, he did not do so and affirmatively stated to the Court that he did not wish to make a statement. Under these circumstances, a reasonable attorney would not have thought he had a duty to consult with his client about filing an appeal.

In support of his argument, Ballard relies in part on *D-8 v. United States*, 2019 WL 2004098, at *4 (E.D. Mich. May 7, 2019), which determined that "Petitioner reasonably demonstrated an interest in pursuing an appeal that obligated counsel to contact Petitioner and obtain his decision rather than simply ignoring the situation and avoiding contact with Petitioner and then resting on Petitioner's silence or failure to request an appeal." In that case, as Ballard correctly states, the Court found that the defendant's expressions of unhappiness with his sentence coupled with the defendant's father's communication to the attorney that the defendant wanted to appeal were sufficient to demonstrate interest in appealing. [5] Those facts are not present in this

---

[5] Athough the Court pointed out that "*Flores-Ortega* and *Garza* [*v. Idaho*, 568 U.S. 232 (2019)]'s requirement that defense counsel potentially jeopardize their client's interests by filing an appeal they believe has no merit is counterintuitive. If the defendant breaches the plea agreement by filing the appeal, the value of the plea agreement could be lost and the defendant may face a harsher sentence than the sentence negotiated in the original plea agreement," *D-8*, 2019 WL 2004098, at

case. Although Ballard discussed withdrawing his guilty plea, he never made any affirmative statements to Attorney Ballin instructing him to file such a motion. Nor did he indicate to the Court that he wished to do so. For that matter, in Ballard's Declaration in support of his amended motion, he does not assert that he either told Attorney Ballin to file a motion to withdraw his guilty plea or that he had ever indicated to Ballin a desire to appeal his conviction. (Ballard Decl., ECF No. 35-1.) Instead, Ballard explains why he pled guilty (e.g., he did not believe that Attorney Ballin was prepared to go to trial, and he feared that his testimony alone would not convince jurors that his actions were "for a legitimate medical purpose in light of the Government's expert's testimony") and why he believes that the factual basis set out in the plea agreement does not actually allege criminal activity on his part. (*Id.* at pp. 1-2.)

The *Flores-Ortega* Court provided guidance on what factors the Court should consider when determining whether a rational defendant would want to appeal or if a particular defendant reasonably demonstrated an interest in appealing:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

528 U.S. at 480. These factors weigh against Ballard's claim that his counsel was constitutionally ineffective for not consulting with him about an appeal.

First, Ballard pled guilty instead of proceeding to trial. Second, Ballard received the sentence he bargained for. Third, Ballard waived all rights to appeal his sentence except the right

---

*4, ultimately, the Court concluded that "[r]egardless of the tension created by *Flores-Ortega* and *Garza*, counsel is required to file the appeal if the defendant requests an appeal." *Id.* at *5.

to appeal the imposition of any sentence inconsistent with the provisions of the plea agreement. Based on these factors, Ballard has failed to show that there was reason for his counsel to think that he would have wanted to appeal or that a rational defendant would want to appeal. Therefore, Attorney Ballin did not provide constitutionally deficient performance under the first prong of *Strickland*, and Ballard's ineffective assistance of counsel claim based on his attorney's failure to consult with him about an appeal must be dismissed. *See Wright v. United States*, 320 F. App'x 421, 425 (6th Cir. 2009) (finding that "the district court properly dismissed Wright's ineffective assistance of counsel claim based on his counsel's failure to consult with him about an appeal.")

Additional evidence supporting the Court's decision is the affidavit of Attorney Ballin in which he states that Ballard did not ask him to file a direct appeal nor was there a "non-frivolous basis for such a filing." (Ballin Aff. p. 3, ECF No. 18-3.) Attorney Ballin attached to his affidavit a statement signed by Ballard two days prior to his plea hearing in which he acknowledged that he "faced life and forfeiture into the millions," and therefore did "NOT want to go to trial." (*Id*. at p. 9.) Ballard has pointed to no facts in the record that would suggest that a rational defendant would have wanted to appeal.

Ballard's discussions with Attorney Ballin prior to his sentencing about possibly moving to withdraw his guilty plea did not trigger the duty to consult about filing a notice of appeal. That is, Ballard has failed to show under *Roe v. Flores-Ortega* either that there were "nonfrivolous grounds for appeal" or that he "reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. Attorney Ballin's alleged failure to consult Ballard about appealing his conviction was not deficient performance because, under the circumstances as discussed above, he had no duty to do so.

19

Furthermore, Ballard cannot demonstrate prejudice under *Strickland* on this claim because he cannot show that he would have appealed but for the alleged failure to inform him of that right. As noted by the Government, Ballard got the sentence he bargained for (which limited both his time in prison and his financial responsibility), and he ultimately decided not to withdraw his plea, which undermines his claim that Attorney Ballin should have known that he wanted to appeal.

Next, the Court must consider whether Attorney Ballin provided ineffective assistance of counsel in failing to file a motion to withdraw Ballard's guilty plea. It is undisputed that, before he was set to be sentenced, Ballard informed Attorney Ballin that he wanted to withdraw his guilty plea. After consulting with the Tennessee Board of Professional Responsibility, Attorney Ballin determined that he could not ethically file such a motion "because [Ballard] could not provide a fair and just reason for requesting the withdrawal, but rather, [Ballard] wanted [Ballin] to represent to the Court that the statements in the plea agreement had not been true." (Ballin Aff. p. 2, ECF No. 183-3.) Attorney Ballin avers that he "could not in good faith make such an assertion to the Court." (*Id.*). Accordingly, Attorney Ballin advised Ballard to seek the advice of separate counsel. Ballard did so and was advised by Attorney Camp as to the potential negative consequences of moving to withdraw.

On October 18, 2021, the day before he was set to be sentenced, Ballard emailed Attorney Ballin a "sentencing hearing statement" that Ballard was considering reading, essentially asking the Court not to accept the plea agreement and allow him to withdraw from the agreement without penalty and go to trial. However, Ballard chose not to make any statement at sentencing.

Attorney Ballin's affidavit states that he "provided advice to Mr. Ballard about the positive and negative aspects of both a guilty plea and a jury trial, listened to his priorities, and answered his questions." (*Id.* p. 5.) He "counseled him that, given the difficult facts, circumstances, and level

20

of exposure in his case," Attorney Ballin believed that Ballard should accept the Government's offer. (*Id.*) However, Attorney Ballin was prepared to take the matter to trial. (*Id.*)

As for Ballard's contention that Attorney Ballin "failed to hire any experts to vouch for his prescribing practices," the affidavit describes Attorney Ballin's attempts to hire a medical expert, but none of the individuals contacted by Attorney Ballin could provide favorable opinion testimony. (*Id.*) The affidavit also describes the efforts made by Attorney Ballin to provide discovery to Ballard. (*Id.* at pp. 5-6.) Attorney Ballin also made multiple attempts to discuss the Pre-Sentence Report ("PSR") with Ballard. (*Id.* at p. 6.) However, Ballard was not responsive to those attempts according to various letters and emails submitted with Attorney Ballin's affidavit. (*Id.* at pp. 13-20.) Finally, Attorney Ballin describes the steps he took to prepare for trial. (*Id*. at p. 6.)[6]

The parties agree that, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a defendant may withdraw a guilty plea . . .

> (1) before the court accepts the plea, for any reason or no reason;
> or
> (2) after the court accepts the plea, but before it imposes sentence if:
>    (A) the court rejects a plea agreement under 11(c)(5); or
>    (B) the defendant can show a fair and just reason for requesting withdrawal.

Fed. R. Crim. P. 11(d). Rule 11(d)(2)(B) applies to the present case. "This rule is designed 'to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *United States v. Ellis*, 470

---

[6] Ballard has not brought a claim of ineffective assistance on the ground that Attorney Ballin failed to prepare for trial. However, he does suggest that he pled guilty because Ballin was not prepared to go to trial. Ballin's affidavit shows otherwise.

F.3d 275, 280–81 (6th Cir. 2006) (citations omitted). "Withdrawal of a plea is appropriate [when] there is a real confusion or misunderstanding of the terms of the agreement." *Id.* at 281 (citation omitted). In contrast to filing a notice of appeal, "a defendant has no right to have his attorney carry out every other request he makes, without regard to whether the request is meritless or frivolous. Such requests certainly include a motion to withdraw a plea, which are disfavored in federal courts, even when made before a sentence is imposed." *Franks v. Lindamood*, 401 F. App'x 1, 6 (6th Cir. 2010).

The parties also agree that the Court must look to the Sixth Circuit's non-exclusive seven-factor list set out in *United States v. Bashara*[7] to determine whether withdrawal is "fair and just'" under 11(d)(2)(B). These factors include:

> (1) the amount of time that has elapsed between the plea and motion to withdraw it; (2) the presence (or absence) of a valid reason for failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181.

After considering these factors, the Court finds that Attorney Ballin's failure to move to withdraw Ballard's plea was not deficient performance because Ballard entered his plea knowingly and voluntarily and did not communicate any sufficient basis for withdrawing his plea. Ballard cannot show prejudice because he has not shown a reasonable likelihood that he would have been permitted to withdraw his plea, particularly given the delay between his plea hearing and when he advised Attorney Ballin that he was considering withdrawing his plea.

---

[7] *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by United States v. Caseslorente*, 220 F.3d 727, 734 (2000).

Ballard acknowledges that the delay between entry of his guilty plea and his request for the motion to be filed was approximately two and a half months. And, he admits that "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). He points out that delay alone does not mean that he lacked a fair and just reason for withdrawing his plea. But, it is a factor for the Court to consider under *Bashara*.

According to Ballard, due to his inexperience with the legal system and lack of guidance, he was under the mistaken impression that he could withdraw his guilty plea at any time. However, he has offered nothing to support his "mistaken impression" such as correspondence with Attorney Ballin or even by pointing to statements made by Ballin that allegedly misled him into thinking he could withdraw his guilty plea at any time. He does contend that Ballin's instructions to him "to wait several weeks then provide counsel with reasons for withdrawing was unreasonable under the circumstances." The Court views this otherwise. It was entirely reasonable for Attorney Ballin to advise Ballard to take some time to consider his reasons for wanting to withdraw his plea and whether doing so would be in his best interest.

Attorney Ballin memorialized his conversation with Ballard about the prospect of filing a motion to withdraw Ballard's guilty plea in a letter dated September 15, 2021, reminding Ballard that withdrawal would require court approval after showing a "fair and just reason," and that doing so could have detrimental collateral consequences. (Ballin Aff. p. 18, ECF No. 18-3.)  Attorney Ballin stressed that it was "imperative that you keep the lines of communication with our office open over the coming weeks," and he directed Ballard to "advise [Attorney Ballin] by October 4, 2021 how you intend to proceed." (*Id.*) As noted above, Ballard did not "keep the lines of

communication open." Instead, Ballard waited until October 4 to confirm that he wanted to withdraw his plea. According to Ballard, "Mr. Ballin called me back later that day [October 4], and told me he could not file the motion to withdraw because the reasons I gave him '[we]re frivolous,'" after which "Mr. Ballin and I closed the conversation with the understanding that I would seek advice from another attorney [about the possibility of filing a motion to withdraw]." (Mot. p. 37, ECF No. 1.)

One week later, on October 11, 2021 (eight days before his sentencing hearing), Ballard discussed withdrawing his plea with Attorney Camp who pointed out the various collateral consequences that could arise from withdrawal and recommended against filing a motion to withdraw. (*Id.*) Ballard then informed Attorney Ballin that he would proceed with sentencing. (*Id.*) At sentencing, Ballard chose not to make any statement. Contrary to Ballard's assertions, he received advice from two attorneys concerning the advisability of filing a motion to withdraw his plea which undercuts his claim that he received "no guidance" in making his decision.

Ballard argues that he has steadfastly asserted his innocence. However, this ignores his sworn statements during the plea colloquy that the factual basis contained in the plea agreement was accurate and that his plea was knowing and voluntary. Ballard admitted to the Court, under oath, that he was pleading guilty because he was guilty and for no other reason. *See Hasan v. United States*, 2023 WL 116707, at *2 (E.D. Tenn. Jan. 5, 2023) (When "the court has scrupulously followed the required procedure [during a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986))). Moreover, Ballard signed the plea agreement two days before the plea hearing acknowledging the same factual basis recited at the plea colloquy.

As for the circumstances underlying the guilty plea, Ballard acknowledges that the Rule 11 colloquy presents a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). However, there exists the possibility "that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others . . . ." *Id.* at 75. Ballard claims that he entered his guilty plea under "several misunderstanding and misrepresentations" including the mistaken belief that he could withdraw his guilty plea at any time for any reason. However, he has provided no support for his claim. Moreover, Ballard received what he bargained for regarding his plea agreement. He avoided a possible life sentence and "saved" his family from financial ruin by bargaining for and receiving certain financial concessions. Moreover, he and his family avoided the attendant publicity that a trial would have generated. Of lesser note, although it seems to have been important to Ballard, by entering into a plea agreement, he was allowed to self-report to prison.

Ballard's nature and background weigh against disturbing the finality of his guilty plea. Ballard has an advanced degree, is able to read, write, and understand written records, and possessed the faculties necessary to fully grasp – over the course of more than two years and with Attorney Ballin's assistance – the nature of the charges against him and the impact of resolving his criminal case by plea.

The Government acknowledges that Ballard lacks experience with the criminal justice system. Thus, this factor weighs in his favor.

Next, Ballard contends that the prejudice to the Government would have been minimal at the time that he requested the motion be filed. To the contrary, the Court agrees with the Government that it would have been prejudiced if Ballard had been permitted to withdraw his plea.

Ballard was indicted in April 2019. Over two years elapsed while the Government and Attorney Ballin litigated pretrial issues, prepared for trial, and engaged in plea negotiations. Given the passage of time, out-of-state and out-of-city experts, and the death of at least one witness (according to the Government), continued delay would have prejudiced the Government.

In summary, Ballard has failed to show that, after discussing withdrawing his guilty plea with Attorney Ballin, he actually instructed him to file such a motion. Furthermore, Attorney Ballin has explained why doing so was not in Ballard's best interests, and Attorney Camp provided independent advice that Ballard should not proceed with a motion to withdraw his plea. Thus, Ballard has not shown that Attorney Ballin's representation fell below "an objective standard of reasonableness," especially when considering the "strong presumption" that his representation was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89.

As for *Strickland*'s prejudice analysis, Ballard must show that Attorney Ballin filing his motion to withdraw would have changed the outcome of the proceeding. He cannot do so. "[W]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006) (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

Ballard has not shown that Attorney Ballin's performance was below that guaranteed in the Sixth Amendment. Nor has he shown that, but for Ballin's ineffectiveness, there is a reasonable probability that, after assessment of the *Bashara* factors, the motion would have been granted, and Ballard would have gone to trial instead. Thus, this claim fails.

26

Ballard's third claim is that, after the Supreme Court's decision in *Ruan v. United States*, 597 U.S. 450 (2022), there is an insufficient factual basis for his guilty plea.[8] *Ruan* did not change the elements of a controlled substances charge under 21 U.S.C. § 841(a)(1). Instead, the *Ruan* Court held that, if a physician defends the charge based on authorization — that he dispensed controlled substances "pursuant to valid prescriptions" — the Government must do more than show that the prescriptions lacked "a legitimate medical purpose." *Id.* at 455, 457. The Government must prove that the physician "knowingly or intentionally acted in an unauthorized manner." *Id.* at 464-65, 457 ("Once the defendant meets his or her burden of production, then, the Government must prove lack of authorization beyond a reasonable doubt.").

In the present case, Ballard acknowledged acting with the requisite mens rea in the factual basis of the plea agreement and again at the change of plea hearing. Specifically, he admitted that he "unlawfully distributed and dispensed the Schedule II controlled substance hydrocodone to one of his patients, A.L., including on the day before A.L. died from an overdose of the hydrocodone that Defendant Ballard had prescribed her," and that he "did intentionally and knowingly distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, hydrocodone, a Schedule II controlled substance, to [A.L.], and her death resulted from the use of that hydrocodone." (Plea Agr. P. 2, ECF No. 101, No. 1:19-cr-10042-STA; (Tr. pp. 23-24, ECF No. 108, 1:19-cr-10042-STA.)  This factual basis of the crime, as admitted to by Ballard under oath, supports the crime for which he was convicted. The Supreme Court's holding in *Ruan* does not change that outcome.

---

[8] The Government argues that Ballard has procedurally defaulted on this claim. The Court need not reach that issue but, instead, will decide the claim on the merits.

**Appeal Issues**

A § 2255 movant may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the [motion] was denied on procedural grounds, the [movant] must show, 'at least, that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the motion. Because any appeal by Ballard does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.* In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.

Leave to appeal *in forma pauperis* is therefore **DENIED**.[9]

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. Thomas Anderson
United States District Judge

Date: April 2, 2026.

---

[9] If Ballard files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.